Schenck *v.* Hart.

SARAH R. SCHENCK, appellant,

*v.*

NOAH S. HART, respondent.

1. Complainant, who had received a transfer of a debtor's property, with intent to defraud creditors, and had transmitted it, with like intent, to a third person, who, with complainant's consent, had transferred a portion of the proceeds of the sale thereof to the debtor's wife, absolutely, and without any evidence of an express trust in favor of the debtor,—*Held*, not to be entitled to enforce a judgment against the debtor upon the proceeds thus transferred, or upon property purchased by her with such proceeds.

2. Neither party to a transfer, with intent to defraud creditors, can impeach the transaction, or set up that it was not what it purported to be.

On appeal from a decree of the chancellor, reported in *Hart* v. *Schenck, 5 Stew. Eq. 148.*

*Mr. B. Gummere,* for appellant, cited—

*Ferraby* v. *Hobson, 2 Phill. 255, 258; Glasscott* v. *Lang, 2 Phill. 310, 322; Price* v. *Berrington, 3 MacN. & G. 486, 498–9; MacGuire* v. *O'Reilly, 3 Jo. & Lat. 224; Wilde* v. *Gibson, 1 H. L. Cas. 605, 621–2; Hickson* v. *Lombard, L. R. (1 H. L.) 334, 336; Eyre* v. *Potter, 15 How. 43; Hoyt v. Hoyt, 12 C. E. Gr. 399; Doe* v. *Roberts, 2 B. & Ald. 367; Bateman* v. *Ramsay, Sau. & Scul. 459, 478; Brackenbury* v. *Brackenbury, 2 Jac. & W. 391, 393; Nellis* v. *Clark, 4 Hill 424, 426; Smith* v. *Hobbs, 10 Me. 71, 76; Norris* v. *Norris, 9*

*Dana 318; Creath's Adm'r v. Sims, 5 How. 192, 204; 3 Stock. 551; 2 Beas. 357; 4 C. E. Gr. 42.*

*Mr. J. S. Aitkin*, for respondent, cited—

*Chandler v. Herrick, 3 Stock. 497; Campion v. Kille, 1 McCart. 232, 2 McCart. 476; Brantingham v. Brantingham, 1 Beas. 160; Van Sciver v. Bryan, 2 Beas. 434; Mead v. Combs, 11 C. E. Gr. 173; Marsh v. Mitchell, 11 C. E. Gr. 499, 12 C. E. Gr. 631; 3 Stock. 551; Lokerson v. Stillwell, 2 Beas. 357; Eyre v. Eyre, 4 C. E. Gr. 42.*

The opinion of the court was delivered by

MAGIE, J.

The bill in this cause was filed by Noah S. Hart against his sister Sarah R. Schenck, John G. Schenck, her husband, and Abraham B. Randolph, trustee. It sets out a judgment, entered in the supreme court of this state, on June 6th, 1876, in favor of Noah S. Hart against John G. Schenck, for $2,488.21, damages and costs, founded on a promissory note for $1,600, given by said Schenck to said Hart, on a settlement between them alleged to have been made January 30th, 1869. The note was dated on that date, and was payable, with interest, on March 1st, 1871.

The bill further alleges that, about March 6th, 1872, John G. Schenck purchased certain real estate, situated at Belvidere, and particularly described in the bill, and paid all the consideration that was paid therefor, and that he took the conveyance thereof in the name of his wife, Sarah R. Schenck. It asserts that John G. Schenck has no other property out of which complainant's judgment could be made. It charges that the deed of the property was made to Mrs. Schenck, in order to prevent the collection of complainant's claim against her husband, and it prays that complainant's judgment may be declared to be a lien on the Belvidere property, and that that property may be decreed

to be liable to the payment of his judgment debt and be sold therefor.

Abraham B. Randolph was made a defendant, because it was alleged that John G. Schenck had made a conveyance of the Belvidere property to him, as trustee for Garret Schenck, an infant son of John G. and Sarah R. Schenck. The last-mentioned conveyance was charged to be voluntary and without consideration, and made with intent to defraud the creditors of John G. Schenck. The bill also prayed that this conveyance should be set aside.

To this bill, the defendant, Sarah R. Schenck, filed a separate answer, in which she denied that her husband had any interest in the Belvidere property, other than the possibility of curtesy in case he survived her. She averred that the property was bought, not with his money, but with her own means, which belonged to her as her separate estate. She specifically stated the manner in which the purchase was made, and declared that the separate estate, which she had used in the purchase, was originally acquired by her by gift from her uncle, George H. Hart. That gift consisted, as she declared, of the bond of Samuel K. Wilson, dated March 1st, 1866, made to George H. Hart, and conditioned for the payment of $7,000, with interest, and the mortgage securing the same upon the State Street House, in Trenton. This bond and mortgage, she averred, were assigned to her by her uncle, as a gift, with the knowledge and assent of her brother, the complainant, and with the intent to vest the absolute property thereto in her as her separate property, free from the control of her husband. She further averred that no trust in favor of her husband was intended to be, or was created by said gift.

The answer of John G. Schenck denied that the Belvidere property was purchased by him, or with his money, and declared that it was purchased by his wife and with her separate estate. He admitted that the conveyance to Randolph was purely voluntary, but insisted that nothing passed, or could pass, by the deed, because he had no title to or

Schenck *v.* Hart.

interest in the property, except a possibility of curtesy in case of his surviving his wife.

The answers were called for and put in under oath.

Upon the issue thus framed, testimony was taken, and the proofs disclosed the following facts: The Belvidere property, which the bill seeks to charge with the lien of complainant's judgment, was conveyed to Sarah R. Schenck, by John H. King and wife, by deed dated March 16th, 1872. The consideration of the conveyance was $7,700. Of this amount $2,000 was paid by a purchase-money mortgage · upon the premises conveyed. The remainder, $5,700, was paid by the assignment to King of two mortgages, one for· $2,000, made by Caroline Van Zandt and husband to Sarah R. Schenck, and the other for $3,700, made by Mary A. Taylor to Sarah R. Schenck. The Van Zandt mortgage had been acquired by Mrs. Schenck in a sale made by her to Mrs. Van Zandt of a farm in Ewing township, Mercer county. The Taylor mortgage had been acquired by Mrs. Schenck in a·sale made by her to Mary A. Taylor, of a dwelling-house in Trenton. The dwelling-house had been acquired by Mrs. Schenck in the sale of the farm in Ewing township above referred to. The farm had been acquired by Mrs. Schenck by purchase from Reuben Davison, who, with his wife, conveyed it to Mrs. Schenck, by deed dated March 23d, 1869. The consideration of this purchase was paid by the assignment from her to Davison of a bond and mortgage for $7,000. The mortgage was made by Samuel K. Wilson and wife to George H. Hart, upon a hotel in Trenton called the State Street House. It bore date March 1st, 1866, and secured upon that property Wilson's bond to Hart, conditioned for the payment of $7,000 on March 1st, 1871, with interest. The last-mentioned bond and mortgage were given for part of the purchase-money of the State Street House, which had been sold to Wilson by George H. Hart, and were assigned by him to Mrs. Schenck, by an assignment dated January 7th, 1869.

It will be perceived, from this statement, that the Belvidere property was .paid for by mortgages of Sarah R. Schenck, which are traced back to the Wilson bond and mortgage of $7,000, which she acquired by assignment from George H. Hart.

The State Street House had been once owned by John G. Schenck. He was a member of the firm of Titus, Burroughs & Co., which, about 1860, failed, with considerable outstanding liabilities.    About the same time, Schenck conveyed the State Street House to Noah S. Hart, the complainant. The title was held by him until 1863, when he conveyed it to George H. Hart, who held it until 1866, when he sold it to Samuel K. Wilson. Out of this sale, George H. Hart acquired the $7,000 mortgage, which he assigned to Mrs. Schenck.

The conveyances of the State Street House, above mentioned, were attacked by the creditors of Titus, Burroughs & Co. as having been made to defraud them. A bill was filed in the court of chancery, the object of which was to set aside the conveyance thereof, made by Schenck to the complainant in this cause, and that made by him to George H. Hart.    While those proceedings were pending and, as appears from complainant's admissions, being vigorously pushed, a compromise was effected, by which certain of the debts of the firm of Titus, Burroughs & Co. were assumed by Schenck, and complainant became security for the performance by Schenck of that assumption.

The evidence leaves no room for doubt that the conveyances of the State Street House, above mentioned, were made and accepted in pursuance of a design to prevent the property from being reached by the claims of the creditors of John G. Schenck.    While it is true that complainant, both in his answer to the creditor's bill filed in respect to that property and in his testimony in this cause, declares that he paid $16,000 for the property, and paid it in full, and that there was no agreement that Schenck should retain any interest therein; yet his cross-examination clearly evinces

the untruthfulness of his statement.   He admits that he conveyed the property to George H. Hart for the consideration of $14,000, the largest part of which was paid by a sham transfer of property from him to complainant, which was done, as complainant says, "to look more like business." Complainant afterward reconveyed the property he thus received, to George H. Hart, whenever requested, and without any consideration.   He further admits that the State Street House was conveyed to. George H. Hart, to be held by him under an agreement between complainant and Schenck; that the creditor's suit, then pending, was to be contested by complainant, but that he (complainant) was not to be the loser thereby; that it was to be carried on at Schenck's expense, and Schenck was to take the property back.   He also admits that, after the conveyance to George H. Hart, he (complainant) had just as much interest in it as he had before, viz., "to do as well with the property as we possibly could, for the benefit of John Schenck and wife." He finally declares that, at the time of the settlement, it was understood between the parties that " all that was left of the property was to go to John G. Schenck, over and above the indebtedness and expenses."   The whole evidence, taken together, is convincing that the State Street House was conveyed by both deeds with intent to defraud Schenck's creditors.

The sale of the State Street House to Wilson was *bona fide.*   The $7,000 mortgage which arose therefrom, manifestly represented, at least in part, the proceeds over and above the indebtedness and expenses which complainant and George H. Hart had paid out.   In January, 1869, complainant and Schenck had a settlement of their affairs, and the result was a note for $1,600, made by Schenck to complainant.   At the same time, the $7,000 mortgage was assigned by George H. Hart to Mrs. Schenck.   Complainant testifies that the assignment was made with the consent and at the request of Schenck.   Schenck and his wife both deny this, and declare that Schenck demanded that the mortgage

should be assigned to him, and that complainant refused to do so, but assigned it to Mrs. Schenck. It is clear that the bond and mortgage were under the control of complainant, and were assigned according to his directions, because he admits that." the papers could not be placed in her hands without my consent; that was the understanding; I gave my consent to ·my uncle; I told him I had settled with John Schenck; I told him I believed everything was all fixed now, and the papers could be handed over, so far as I was concerned." The mortgage was then assigned to Mrs. Schenck, and she signed the $1,600 note with her husband. Complainant says she signed it in consideration of the assignment, and upon a promise to pay the note out of the mortgage, and that the note was, consequently, made payable at the same date the mortgage became due. This is denied by Mrs. Schenck, who insists she only signed the note as surety for her husband. · It also appears that, at the time of this assignment, some of the indebtedness of John G. Schenck was still outstanding and unpaid.

In the view I take of this case, it is unnecessary to determine the precise terms on which the assignment was made, or what liability was incurred by Mrs. Schenck by the execution of the note. It sufficiently appears that the mortgage was proceeds of property which had been conveyed to and received by complainant in fraud of the creditors of John G. Schenck; that complainant transmitted that property to George H. Hart with like fraudulent intent, and that the mortgage thus arising was assigned, with complainant's consent and under his direction, to Mrs. Schenck, with the intent to make it her property.

Upon these facts, the decree imposing the lien of complainant's judgment upon the Belvidere property cannot be sustained.

It will be at once noticed that the case made by the proofs is quite variant from the allegations of the bill. The gravamen of the charges of the bill is the purchase of the Belvidere· property with the money of Schenck, the judg-

ment debtor, and the conveyance thereof to Mrs. Schenck with intent to hinder the collection of the judgment. The proofs disclose a fraudulent transfer of the property of the judgment debtor, about twenty years ago, out of which transfer, by various transmutations, the consideration paid for the Belvidere property was acquired. Since the complainant was fully informed in respect to the whole transaction, his bill was, to say the least, disingenuous.

But, passing over this objection, and admitting that complainant, to sustain the allegations of his bill, is entitled to show that the mortgages which were used to purchase the Belvidere property originated in property which had belonged to the judgment debtor and been transferred by him with intent to defraud creditors, the decree is not sustainable.

The conveyances by which Schenck transferred the State Street House to complainant, and complainant to George H. Hart, being made to delay, hinder and defraud creditors, were, by virtue of the second section of our statute of frauds then in force, absolutely void as to creditors whose actions were thereby in any way hindered, disturbed or defeated. But, by the express language of that act, such result followed only in respect to such creditors. As to all others, and especially as to the parties to the transaction, a conveyance made to defraud creditors was absolute and indefeasible. Such has been the invariable course of decision when he who made a grant to, or bought property in the name of, another, with intent to defraud creditors, has invoked the aid of the courts. *Baldwin* v. *Campfield, 4 Hal. Ch. 891; Eyre* v. *Eyre, 4 C. E. Gr. 42; Sayre* v. *Fredericks, 1 C. E. Gr. 209; Den* v. *Monjoy, 2 Hal. 173.* And, if the view taken by the learned chancellor, in *Ownes* v. *Ownes, 8 C. E. Gr. 62,* viz., that an executed contract or naked trust, duly acknowledged, respecting property conveyed in fraud of creditors, may be enforced in a court of equity, be correct (in respect to which I express no opinion), yet that case fully admits that courts will utterly refuse aid to establish a resulting

trust, or enforce an executory contract growing out of such a fraudulent transaction.

Nor can the other party to such a transaction be entitled to be dealt with on any different principle.   The language of the act, and reasons originating in sound, public policy, equally forbid him from being permitted to avail himself of a transaction in which he was a guilty party, or to invoke the aid of the courts in any case in which he has to rely upon the fraud in which he took part.   I find no case in which relief has been sought by the grantee in such a transaction, and for obvious reasons few such are likely to occur. But, the case is clearly within principles recognized in all our courts.   In *Cutler* v. *Tuttle, 4 C. E. Gr. 562,* Chancellor Zabriskie declares that no principle is better settled than that a conveyance designed in fraud of creditors is good *inter partes.*   In *Servis* v. *Nelson, 1 McCart. 100,* Chancellor Green declares that, as between the parties thereto, such a conveyance will not be set aside or relieved against at the instance of either party, each of whom is *particeps criminis.*   And, in *Lokerson* v. *Stillwell, 2 Beas. 357,* the same chancellor declares that no party to an agreement in fraud of legal rights is entitled to the aid of a court of equity.   See, also, *Jackson* v. *Garvey, 16 Johns. Ch. 192.*   In all such cases the maxim *in pari delicto, potior est conditio possidentis* ought to be applied.

After John G. Schenck had made the conveyance of the State Street House to complainant, the title thereto became, so far as the parties thereto were concerned, a vested, absolute and indefeasible title.   Neither could, in any court, impeach it, or claim that it was not what it purported to be. A similar result followed the conveyance to George H. Hart.   Thereafter, the title became equally vested in George H. Hart, and neither he, nor complainant, nor Schenck, could impeach it.   George H. Hart could do what he chose with the property, or its proceeds, so far as Schenck or complainant was concerned, and no court would give them relief against his acts.   If he had chosen to give the pro-

Schenck *v.* Hart.

ceeds of the property back to Schenck, it is possible that
the right of complainant to enforce against them his claim
as a creditor might have revived. But no such transfer
took place. On the contrary, the assignment was made to
Mrs. Schenck, it is admitted, with the intent to make it her
absolute property, not to be reached by the creditors of the
husband, and there was no arrangement or express trust in
favor of the husband. The complainant, in order to defeat ·
the title thus made in the wife, must go back to and set
aside the title made to himself by Schenck with intent to
defraud creditors. That he cannot be permitted to do. The
title he took, and consequently that acquired under it, by
his consent and direction, is, as to him who was *particeps
criminis* in respect thereto, absolute, and cannot be dis-
turbed.

This objection to the complainant's claim, the learned
chancellor declined to consider, when this case was before
him, upon the ground that it was not disclosed in the defend-
ants' answers. The well-known rule thus appealed to, is not,
however, applicable. It is not a question of defence to com-
plainant's claim. The question is, whether complainant has
sustained his claim by proof. His claim is, that the Belvi-
dere property was purchased by the money of Schenck.
The proof is, that the purchase was made by means derived
from the $7,000 mortgage assigned to Mrs. Schenck. In
pursuing his proof, and tracing back that mortgage to
Schenck, it convincingly appears, upon complainant's own
case, that it originated in a fraudulent conveyance made by
Schenck to complainant. By his own proofs, therefore, he
shows a case upon which the court ought not to grant him
relief.

Nor do I consider it necessary that Mrs. Schenck should
have set up this fraud in her answer. There is no proof that
she was aware of it. But, if she knew of it, her claim was
that the mortgage was given to her by her uncle, and it was
sufficient to set out that claim in her answer. Whether or
not she has sustained that claim by her proofs, it is unneces-

sary to consider, since the complainant, by his proofs, has disclosed a case on which he cannot succeed.

Complainant further urges, that the decree which he has obtained ought to be permitted to stand, because he insists that the $7,000 mortgage was assigned to Mrs. Schenck upon her promise to pay the note which is the foundation of his judgment, out of the money to be derived by her from the mortgage when paid. There are two reasons why this contention cannot be successful. In the first place, if there was such a promise made by her, it was enforceable at law under the married woman's act, then in force. In the next place, if it be admitted that there is a concurrent jurisdiction in a court of equity to give relief to complainant, on the ground of a trust resulting from the undertaking to pay out of the moneys received from the mortgage assigned, or other similar ground, such relief could not be given under this bill. The case made by the bill is one of actual fraud. The facts upon which this relief is claimed are not disclosed, or even hinted at, in the bill. To those facts, the defendants have had no opportunity to put in their answer, and to obtain the benefit which the rules of equity pleading accord to a responsive answer. Although there is evidence taken on both sides upon this subject, there is nothing to show that defendants have produced all the evidence within their power to obtain. There was no reason, upon the issue made by the pleadings, why they should do so. To hold the decree under those circumstances, would give complainant relief upon facts which were well known to him at the time he filed his bill, but which he carefully refrained from stating therein, and in respect to which he may have thus deprived defendants of an opportunity to make a defence.

For these reasons, the decree below ought to be reversed, and the complainant's bill dismissed, with costs.

PARKER, J. (dissenting).

The bill in this cause charges that, in the year 1869, John G. Schenck was indebted to complainant; that for such

indebtedness, a promissory note was given to complainant, upon which a judgment has been obtained by him against John G. Schenck. The bill also charges that, at the time such indebtedness originated, John G. Schenck had property more than sufficient in value to pay complainant, and that, with said property, or the proceeds thereof, he has purchased real estate in Belvidere; but had the conveyance thereof made to his wife. The bill further alleges that Sarah R. Schenck (the wife) never had any money or property with which to pay for the real estate in question.

The prayer of the bill is, that the judgment of complainant against John G. Schenck be decreed to be a lien on the real estate at Belvidere; that the said premises be decreed to be held in trust for John G. Schenck, by his wife, liable to the judgment of complainant, and that the same be sold to pay the judgment.

The answers admit the indebtedness, the note, judgment, execution and levy on the Belvidere property, but deny that John G. Schenck had any moneys or securities with which to purchase it. The allegation in the answer of Sarah R. Schenck is, that a mortgage for $7,000, given by Samuel K. Wilson, was assigned to her by George H. Hart, in consideration of natural love and affection, and that, from the avails of that mortgage, she paid for the Belvidere property.

The complainant admits that the proceeds of the Wilson mortgage paid for the premises at Belvidere; but he insists that said mortgage was not the property of Mrs. Schenck, but of her husband, and that, therefore, the said premises belong to him, and are liable for complainant's judgment against him.

The question, then, is, Who owned the Wilson mortgage? Mrs. Schenck says she did not pay anything for it, but that it was a gift to her from George H. Hart. The complainant says she never owned it, and that it belonged to her husband. The evidence in the cause proves conclusively that George H. Hart held the mortgage in trust for John G. Schenck, subject only to the indebtedness of Schenck to complainant.

In the year 1863, the complainant conveyed the State Street House (in which John G. Schenck then had an interest) to George H. Hart, upon a trust, the terms of which have been as distinctly proved as if they had been evidenced by writing. The terms of the trust were, that George H. Hart should have power to sell and convey the State Street House for the best price he could obtain; and, out of the proceeds, first pay to complainant whatever sum John G. Schenck should owe him, and then pay over to John G. Schenck any balance that might remain. The terms of this trust were known by Schenck and wife, and assented to by all the parties interested. On the 1st day of March, 1866, George H. Hart conveyed the State Street House to Samuel K. Wilson, and received from him, in part consideration therefor, the $7,000 mortgage before mentioned.

The account between complainant and John G. Schenck, at the time Wilson gave the mortgage, was unsettled. Complainant had paid a large sum of money to Schenck's creditors, and had assumed the balance of the debts, a part of which he had not yet actually paid. John G. Schenck had no money with which to pay the complainant the balance then due him, but relied upon the proceeds of said mortgage for that purpose; and the mortgage would not mature until March, 1871. Complainant was not willing to have the mortgage assigned to John G. Schenck until his indebtedness to complainant was ascertained and paid, or secured. Consequently, George H. Hart continued, for about three years, to hold the mortgage, upon the same trust as he had held the property he sold Wilson.

In January, 1869, George H. Hart became anxious to be discharged from his trust. The complainant then settled with John G. Schenck, and agreed to accept the joint and several note of Schenck and wife for the amount found due him ($1,600), provided the mortgage should be assigned so that the note should be paid out of its proceeds. To this, all parties assented; and the note, upon which the judgment in question has been entered, was accepted by complainant,

upon the express agreement and promise of both Mr. and Mrs. Schenck that "it should be paid out of the moneys to be received for the mortgage when it became due," and for this reason the note was made payable on the very day the mortgage would mature. Had it not been for such agreement and promise, George H. Hart would not have assigned the mortgage, but would have retained it until it matured, then collected the money, and paid complainant out of the proceeds, in conformity with the trust.

John G. Schenck was called as a witness for defendants. He swore that the assignment of the mortgage to his wife was made against his will; that he protested against it; that it was understood he was to have the mortgage; that the mortgage belonged to him; that he was not present when the assignment was made, and did not know his wife had the mortgage until a day or two after the assignment to her was made.

On several occasions, Mrs. Schenck stated to different persons that she had no property; that all was her husband's, and that she could not do anything, except as he told her. She told her father (as appears by his evidence) that the Belvidere property was bought with her husband's money.

Mary Ann Hart (a sister of complainant and of Mrs. Schenck) testifies that when the complainant asked Mrs. Schenck about the Belvidere property, which stood in her name, she replied that the money was John's, and it would not do for her to dispose of it without he was willing; that it was John's money that laid in the property, and she could not control it; and that she had never had any money of her own.

Mrs. Schenck also told the complainant that she could not pay the note, except by John's consent; that it was all his money; that the property was his, and she had to do as John said; that the property belonged to John, and she could do nothing without him. It also appears, by the evidence, that John G. Schenck used the Belvidere property as

51

his own, spoke of it as his, and carried on business there in his own name.

The creditors of John G. Schenck having been paid by complainant, George H. Hart had no right to assign the mortgage except according to the terms of his trust, to wit, to John G. Schenck, subject to his indebtedness to complainant.

It is said that complainant consented to the transfer to Mrs. Schenck. Even if the complainant had the right at the time of the assignment of the mortgage to direct (beyond his own claim) to whom it should be assigned, his assent to the transfer to Mrs. Schenck was given under the express understanding that the note signed by her husband and herself should be paid out of the mortgage, and Mrs. Schenck took the assignment to hold for her husband's benefit, accompanied by the agreement and promise to pay the $1,600 note out of the moneys received on the mortgage at its maturity. Mrs. Schenck received the assignment of the mortgage upon the same trust as George H. Hart held it.

From all the evidence upon the issue made by the pleadings, I cannot resist the conclusion that the Wilson mortgage, the proceeds of which went into the Belvidere purchase, belonged to John G. Schenck, and, consequently, that the property is liable for the judgment due the complainant.

On the part of Mrs. Schenck, it is contended, that even if the mortgage belonged to her husband, the complainant cannot have relief in this suit, because of his alleged participation in a prior fraudulent transaction, out of which the debt due him is said to have arisen. The allegation is, that in the year 1860, John G. Schenck conveyed to complainant the State Street House, without consideration, to hinder and defraud creditors. Even if this be true, such defence cannot be made under the pleadings in this cause. No such defence was set up in the answer. The defence therein stated is, that the Belvidere property was purchased with the proceeds of a mortgage which had been given to

Mrs. Schenck by George H. Hart, in consideration of natural love and affection. No allegation of fraud on the part of the complainant, either in the inception of the transaction or at any stage of the business, is made. The court cannot notice a defence not set up in the pleadings. *Marsh* v. *Mitchell, 11 C. E. Gr. 499, 12 C. E. Gr. 631.* Evidence relating to matters not stated in the pleadings, is impertinent, and cannot be the foundation of a decree. *Vansciver* v. *Bryan, 2 Beas. 434.* In a court of equity as well as in a court of law, the parties are confined to the issues made by the pleadings. *Brantingham* v. *Brantingham, 1 Beas. 160.* A defendant must stand by his answer. If he make out a defence not set up in the answer, it will not avail him. *Chandler* v. *Herrick, 3 Stock. 497.*

But, if Mrs. Schenck could avail herself of this defence, the proofs do not sustain it. Her only witness on that question is John G. Schenck. He says that in the year 1860 he conveyed the State Street House to complainant, to hinder and defraud his creditors. The complainant positively denies this, and says that he bought the property of John G. Schenck, for a valuable consideration. He details the particulars of the purchase and payments. He says that John G. Schenck, at the time, owed him $2,300, to save which was the motive of his purchase.

The complainant, in his evidence, says, in substance, that he thought the property was at the time worth all Schenck owed to him and to others; that he could probably sell it for enough to pay himself and the other creditors of Schenck, and if he found he could not do that, he would hold the property as an investment.

The circumstances confirm complainant's version of the transaction. The vouchers he produces correspond with his statement of the amount of the purchase-money, and the mode and time of payment. Complainant paid Schenck's debts. The best evidence that complainant did not enter into an arrangement to defraud Schenck's creditors, is the fact that he satisfied their claims.

Schenck *v.* Hart.

The complainant says that after he purchased the State Street House from Schenck, and litigation was impending, Schenck, at his request, agreed to take the property back, but in such way that complainant should be paid or secured for the amount he had paid or should pay for him. After the debts were paid, complainant and John G. Schenck could make any disposition of the property they saw fit. Complainant had the right to resell and reconvey to Schenck directly, or to George H. Hart in trust.

Had there been fraud in the original transaction or in the conveyance to George H. Hart, he might have refused (under the ruling in *Lokerson* v. *Stillwell*), to assign the mortgage to any one; but he did not refuse and did assign it, with the understanding that it should go for John G. Schenck's benefit, after payment of complainant's claim against him.

The complainant has a strong equity in his favor. After paying the debts of John G. Schenck (except his own claim), the complainant conveyed the property he held, in trust, so that Schenck might have the benefit of the balance of the proceeds after the payment of the debt due complainant. At the time the mortgage was assigned to Mrs. Schenck, she received it on the same trust. Without any compensation for his trouble and risk, complainant paid the other debts, and for his own claim the mortgage and its proceeds were to be responsible. It should be so held by the court. The defendants should not be permitted to take advantage of one who has acted with fairness and liberality towards them, and avoid payment to him, the only remaining creditor, of a debt contracted for the purpose of satisfying the other creditors of John G. Schenck.

The decree of the chancellor should be affirmed.

For affirmance—Depue, Parker, Dodd—3.

For reversal—Dixon, Knapp, Magie, Scudder, Van Syckel, Cole—6.